**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES EX REL, | : | CIVIL ACTION NO: 1:11cv825 |
| DR. G. DARYL HALLMAN | : | |
| | : | JUDGE: MICHAEL R. BARRETT |
| Plaintiff-Relator | : | |
| | : | |
| vs. | : | |
| | : | |
| MILLENNIUM RADIOLOGY, INC., et al. | : | |
| | : | |
| Defendants | : | |

___

**PLAINTIFF/RELATOR G. DARYL HALLMAN'S
COMBINED REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. #301)
AND MOTION IN LIMINE RELATING TO THE ISSUE OF
THE PROPER MEASURE OF DAMAGES ETC. (DOC. #316)**
___

### A. INTRODUCTION

In their opposition to Plaintiff/Relator G. Daryl Hallman's argument in his motion for partial summary judgment that the proper measure of damage in this case is the full amount of each tainted claim and his motion in limine to establish proper measure of damages, etc., Defendants rely heavily on the Sixth Circuit decision in *United States ex. rel. Wall v. Circle C. Construction, LLC*, **813 F.3d 616 (6th Cir. 2016)**. However, even a cursory review of *Wall* reveals that Defendants misinterpret the holding in *Wall* which requires a finding that the damage to which Hallman and the United States are entitled when he establishes that the Defendants' 2011 PSA violated the Anti-Kickback Statute ("AKS") and False Claims Act ("FCA") are the full

amount of *each* tainted claim Defendants submitted.[1] Morever, that holding means that *none* of the following is relevant to any issue in this case:

1. whether the services that are the subject of Defendants' tainted claims were necessary;

2. whether the services that are the subject of Defendants' tainted claims were actually provided;

3. whether the government would have otherwise paid for the services that are the subject of Defendants' tainted claims if the 2011 PSA did not violate the FCA and AKS;

4. whether any patient was harmed as a result of the services that are the subject of Defendants' tainted claims; and

5. whether Defendants' alleged kickback relationship reduced patient costs.

Indeed, to permit Defendants to introduce any of this "evidence" will not only be wrong and highly prejudicial to Relator, it will be tantamount to permitting Defendants to convince the jury to engage in jury nullification.

### B. THE COMPARISON OF *WALL* AND THIS ACTION

In *Wall*, the government entered into a contract with Circle C Construction, LLC ("Circle C") under which Circle C was required to build several warehouses on an Army base. Part of the construction included electrical work for which the government paid $259,298.18. After the government had paid the $259,298.18 for the electrical work, it discovered that Circle C had paid some electricians $9,916 less than the Davis-Bacon Act wage requirements under the contract. This underpayment meant that Circle C was liable under the FCA because it rendered false a number of the compliance statements Circle C had submitted to the government.

---

[1] These damages, which are comprised of the full amount the government paid and the mandatory treble damages and penalties, total $1,290,811.808.

Since there was no dispute that Circle C had violated the FCA, the only issue that remained was the amount of the government's damages. The government argued that, even though there was no question that Circle C had provided the electrical services required under the contract and that the amount of Circle C's underpayment ($9,914) could easily be ascertained, its actual damages were the entire amount that the government paid for the electrical work, $259,298.18, which, when trebled, equaled $777,894.54. In response, Circle C argued that the government's damages were $9,916, which, when trebled, equaled $29,748.

The Sixth Circuit rejected the government's argument. However, in doing so, the Court distinguished cases such as *Hallman* where the correct measure of damages suffered by the government is the amount the government "would have refused to pay if it had known in time, because there is no easily ascertainable alternative like the amount of extra pay owed under the Davis-Bacon Act." *Wall* at 618. The Sixth Circuit reached this conclusion for the following reasons.

First, Circle C's contract with the government was legal, and it was only Circle C's failure to perform a small part of the contract (i.e. to make payments to electricians in compliance with the Davis-Bacon Act) that violated the FCA. This meant that the only tainted claims submitted by Circle C under the contract were those that related to the small amount of underpayments Circle C made to certain electricians. Here, Defendants Millennium Radiology, Inc.'s ("MRI") and Mercy Health Partners of Southwest Ohio and Mercy Hospitals West's ("Mercy") 2011 PSA *itself* violates the FCA and AKS because the agreement memorializes their illegal scheme whereby MRI offered and provided free medical director and marketing services in return for the opportunity to service the patients directed to MRI by Mercy. As such, unlike in *Wall, each* claim MRI and Mercy submitted for services MRI rendered under the 2011 PSA is tainted.

3

Second, the electrical services Circle C provided under its contract were provided directly to the government, which means that the government had the ability to and did confirm that the electrical work had, in fact, been done and that it had been done in accordance with the terms of the contract. Here, all the services provided by MRI under the 2011 PSA were provided to patients, and the government could not and did not determine that the services were necessary and/or actually provided.

Third, under the Davis-Bacon Act, the government was required to review Circle C's weekly "compliance statements" to determine, in part, whether it should withhold payment due under the contracts if wage underpayment had occurred. 48 C.F.R. &22.406-9(a). In this case, the government had no obligation to review MRI's and Mercy's claims to determine if they were tainted.[2]

Fourth, in *Wall* the government bargained for two things (the construction of the buildings and the payment of Davis-Bacon wages), and it was easy for the government to confirm that it got all of those buildings, as well as to determine the precise amount of the wage shortfall ($9.916). For that reason, the Sixth Circuit found that the government's positon was wrong because it "is not that the goods are still being used, but instead it is easy to place a market value on the wage shortfall and, thus, determine the government's actual damages." *Wall* at 617. In this case, MRI and Mercy submitted tens of thousands of claims involving medical services MRI allegedly provided under the 2011 PSA, and virtually all of the information and records related to those services are protected under HIPPA and the patient-physician privilege. As such, absent a waiver by each patient, the information and documents are not obtainable by the government and

---

[2] To impose such a duty on the government would have imposed the impossible task on the government to assess each of the tens of thousands of medical services MRI provided to determine if the service was necessary and, if it was necessary, whether it was actually provided.

Relator. Moreover, even if that information was available to the government and Relator, each such claim would, in essence, be a mini-medical malpractice case. This makes it impossible for the government (and Relator) to determine whether MIR had actually provided those services or, if it did, that they were necessary. As such, it would have been, and still is, impossible "to place a market value on those services."

Fifth, Judge Rogers in his concurring opinion in *Wall* made clear that, in some cases, "the provision of the services or goods violates public interests in ways in which it is difficult to place a market value [on those services], and "[i]n such cases, the government may still claim that the proper measure of damages is the amounts wrongly paid…" *Wall* at 617. This is one of those cases.

Sixth, Judge Rogers also expressed concern in his concurring opinion that defendants in FCA cases would cite the majority's opinion in *Wall* "to suggest more generally that the price of irreversibly provided goods or services…cannot be the measure of False Claims Act damages." *Wall* at 618. Judge Rogers made clear that "[s]uch a suggestion would not be necessary to our holding," and Relator submits is incorrect in this case.

    D.    **THE EFFECT OF *WALL* ON THIS CASE**

        **1.  *Wall* And The Decisions Of The Other Circuits Require A Finding That The Proper Measure Of Damages In This Case Is The Full Amount The Government Paid For The Tainted Claims And The Mandatory Treble Damages And Penalties.**

Unlike in *Wall*, *every* claim that MRI and Mercy submitted for payment to the government is tainted and that "unalterable moral taint makes the [services] worthless to the government." *Wall* at 617. Moreover, it is not only difficult for the government and Relator to place a market value of the services provided under the 2011 PSA; it is impossible to do so. Under these

5

circumstances, the proper measure of damages in this case is the full amount the government paid for the tainted claims and the mandatory treble damages and penalties.

### 2. *Wall* Requires This Court To Grant Relator's Motion In Limine To Establish Proper Measure of Damages Etc.

With the proper measure of damages established in this case, the following "evidence" is irrelevant:

1. whether the services that are the subject of Defendants' tainted claims were necessary;

2. whether the services that are the subject of Defendants' tainted claims were actually provided;

3. whether the government would have otherwise paid for the services that are the subject of Defendants' tainted claims if the 2011 PSA did not violate the FCA and AKS;

4. whether any patient was harmed as a result of the services that are the subject of Defendants' tainted claims; and

5. whether Defendants' alleged kickback relationship reduced patient costs.

As stated above, to permit Defendants to introduce any of this "evidence" will not only be wrong and highly prejudicial to Relator, it will be tantamount to permitting Defendants to convince the jury to engage in jury nullification.

Respectfully submitted,

_____
Mark J. Byrne, Esquire (0029243)
Kenneth F. Seibel, Esquire (0025168)
Jacobs, Kleinman, Seibel & McNally
30 Garfield Place, Suite 905
Cincinnati, OH 45202
Tel: 513-381-6600
Fax: 513-381-4150
Email: mbyrne@jksmlaw.com
kseible@jksmlaw.com
*Attorneys for Relator*

Of Counsel:

Brian E. Hurley, Esquire (0007827)
Lawrence E. Barbiere, Esquire (0027106)
Schroeder, Maundrell, Barbiere & Powers
Attorney for Relator
5300 Socialville-Foster Road, Suite 200
Mason, OH 45040
Tele (513) 583-4200
Fax (513) 583-4203
Dir (513) 583-4242
E-Mail: bhurley@smbplaw.com


A. Dennis Miller, Esquire (0018721)
Bradley A. Powell, Esquire (0034478)
Droder & Miller CO., LPA
*Attorney for Relator*
125 W. Central Parkway
Cincinnati, OH  45202
Tele  (513) 721-1504
Fax   (513) 721-0310
E-Mail:  admiller@drodermiller.com
         bpowell@drodermiller.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was forwarded via electronic mail to the following this 22nd day of October, 2016:

Glenn V. Whitaker, Esquire
Joseph M. Brunner, Esquire
Victor A. Walton, Jr., Esquire
Jacob D. Mahle, Esquire
Vorys, Sater, Seymour and Pease LLP
*Attorneys for Defendant Mercy Health Partners*
   *of Southwest Ohio, Mercy Hospitals West*
301 E. Fourth Street
Suite 3500, Great American Tower
Cincinnati, OH  45202
Email: gvwhitaker@vorys.com
jmbrunner@vorys.com
vawalton@vorys.com
jdmahle@vorys.com

Michael P. Foley, Esquire
Jeffrey M. Hines, Esquire
James J. Englert, Esquire
Rendigs, Fry, Kiely & Dennis, L.L.P.
*Attorneys for Defendants*
   *The Sisters of Mercy of Hamilton, Ohio*
   *d/b/a Mercy Health-Fairfield Hospital;*
   *Our Lady of Mercy Health Hospital of*
   *Mariemont, Ohio d/b/a Mercy Health-*
   *Anderson Hospital; The Sisters of*
   *Mercy of Clermont County, Ohio d/b/a*
   *Mercy Health-Clermont Hospital; The*
   *Jewish Hospital-Mercy Health f/k/a*
   *Jewish Hospital of Cincinnati, Inc.;*
   *and Mercy Health f/k/a Catholic*
   *Health Partners*
600 Vine street, Suite 2650
Cincinnati, OH  45202
Email:  mfoley@rendigs.com
          jhines@rendigs.com
          jenglert@rendigs.com

Andrew M. Malek, Esquire
Assistant United States Attorney
Southern District of Ohio
303 Marconi Boulevard, Suite 200
Columbus, OH  43215
Email:  Andrew.Malek@usdoj.gov
mailto:alan.reider@aporter.com,

                                         /S/  Mark J. Byrne
                                         **MARK J. BYRNE (0029243)**
                                         *Trial Attorney for Plaintiff-Relator*